UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| vs. | : | CRIMINAL NO. 3:99-CR-264-VAB |
| RASHEEN LEWIS | : | May 18, 2020 |

### **UNOPPOSED MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE**

Rasheen Lewis moves pursuant to 18 U.S.C. § 3583(e)(1) for early termination of supervised release. Over the last 31 months, Mr. Lewis, age 42, has worked, remained free of compliance problems, has a stable home life, and has accomplished the "rehabilitative purpose" of supervision, and additional supervision is no longer necessary. United States v. Trotter, 321 F. Supp. 3d 337, 345 (E.D.N.Y. July 13, 2018). United States Probation Officer Kelly Marciel of the District of New Jersey[1] stated that her office takes no position on early termination for Mr. Lewis. Undersigned counsel consulted with Assistant United States Attorney Jonathan Francis, who stated that the government does not object to this motion being granted.

### **BACKGROUND**

On November 16, 1999, Rasheen Lewis and 21 others, including with Leonard Jones, Lonnie Jones, Lyle Jones, Jr., Aaron Harris, Kenneth Richardson, Quinne Powell, and Damon Walker were charged in a drug conspiracy centered in Bridgeport, Connecticut. Doc. # 1. The Court has released the above-listed co-defendants from lengthy terms of imprisonment under the First Step Act. Rasheen Lewis went to trial on one count of conspiracy to possess with intent to distribute heroin, cocaine,

---

[1] The District of New Jersey provides courtesy supervision for Mr. Lewis, however, jurisdiction over the case remains here in Connecticut.

and cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 846. He was found guilty on December 4, 2000.

At his sentencing on March 16, 2001, the Court noted that Mr. Lewis had a less serious role than other co-defendants and expressed reservations about the length of the sentence the then-mandatory guidelines suggested:

> the troubling aspect of this case, and cases similar to it is that the calculations – if you give him a 38 and he's Criminal History II, and you give him the enhancements for role and so forth, he's mandatory life. He's 23 years old. The Court has some reluctance to sentence this 23 year old to prison for the rest of his life, when Aaron Harris, who is clearly the most culpable of all of these people, is also exposed to mandatory life. There seems to be an inequity here, an imbalance where somebody like Mr. Lewis, who's clearly – has got to be responsible for what he did, and was involved in extensive drug dealing, but how do you put him on the same level and give him life and give Aaron Harris life? It's just – There's an imbalance here.

March 16, 2001 Sentencing Transcript, Doc. # 2037, p.12.[2] In response, the parties agreed to a lower drug quantity which reduced his guidelines to 292-365 months. The Court then sentenced him to 300 months in prison and 120 months of supervised release. Doc. # 624. On March 11, 2005 the Court of Appeals ordered a remand in light of the Supreme Court's decision in United States v. Booker, 125 S. Ct. 738 (2005), and the Court of Appeals' decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005). On November 27, 2007, an amended judgment reduced his sentence to 240 months in prison, but the term of supervised release remained at 120 months. Doc. # 2223.

While in prison, Mr. Lewis earned his GED. He also worked in UNICOR industries. He took a required course of drug counseling, despite the fact that, as the Court noted at his sentencing, he had never had a drug abuse problem himself. Transcript at 5. He also reports taking classes in

---

[2] The transcript is not on PACER; the quotation is taken from the government's Crosby remand memo, Doc. # 1805, at 2.

psychology and human communication, but his focus was on working, rather than education, given the length of his sentence. During his 20-year sentence, he received a grand total of only three disciplinary tickets. He was released on October 6, 2017. He has now served over 30 months of supervised release.

Rasheen's first job starting in the halfway house was working for a company that sold boat gear; he packaged specialized bolts and knots, but had to leave when he needed wrist surgery. He had thought of pursuing a commercial driver's license, and looked for a job in a related field, finding work at FedEx, working in a shipping center on an overnight shift, while taking CDL classes during the day. In 2018, with his CDL in hand, he was hired as a driver by Western Express. In March 2019, he began his current job at DHL Metro, where he mostly delivers to various Dollar Tree Warehouse outlets. He has permission from the probation office to travel out of district to New York for work. He is proud of the fact that this full-time (actually, 50 hours a week) job has allowed him to be financially self-supporting.

Mr. Lewis would like to have his supervision terminated in order to increase his job prospects. Not only does he need permission from probation for out of district travel, he is also seeking a TWIC certification[3] in order to be able to access certain maritime facilities (which are numerous in the NY/NJ area where he lives and works). When he has inquired about the credential, he has been told that he cannot receive it while still on supervised release. He would like to start his own trucking company some day, but will need to accumulate some savings to make that feasible.

---

[3] "The Transportation Worker Identification Credential, also known as TWIC, is required by the Maritime Transportation Security Act for workers who need access to secure areas of the nation's maritime facilities and vessels. TSA conducts a security threat assessment (background check) to determine a person's eligibility and issues the credential." https://www.tsa.gov/for-industry/twic

Shortly after his release, Mr. Lewis moved to New Jersey to live with his sister, Abonique, (supervision was transferred, but not jurisdiction over the case). He has one daughter, Rasheya, who was born just before he was incarcerated, and who is now a 21-year old college student at the University of Central Florida, near where her mother lives. Rasheen has worked hard to reestablish a bond with his daughter, and some day, would like to move to Florida to be near her. He reports that he and Rasheya's mother cooperate well as parents.

Rasheen has done well on supervision. As noted, he does not have a history of substance abuse issues, so it is not surprising that he has had no positive drug tests. He did get a speeding ticket, which was dismissed. He also had a misunderstanding with probation about whether or not he had been granted permission for travel to Jamaica; it was not until he got back that he was told permission had not been finalized, but probation treated it as a miscommunication rather than a violation.

A member of this office communicated with United States Probation Officer Kelly Marciel of the District of New Jersey on May 4, 2020. Officer Marciel said Mr. Lewis' compliance has been good enough to be moved to the administrative supervision caseload as of July 15, 2019, and that her office would not take an official position on Mr. Lewis' motion for early termination.

## **DISCUSSION**

A district court may terminate a person's federal supervision "at any time after the expiration of one year of supervised release. . . . if such action is warranted by the conduct of the [person on supervised release] and the interest of justice." 18 U.S.C. § 3583(e)(1). Before ruling on the motion, the district court must consider, in relevant part, the nature and circumstances of the offense, the movant's history and characteristics, the need to afford adequate deterrence, the need to protect the public, and the need to provide educational or vocational training. See id.

What is missing from that list is § 3553(a)(2)(A): the Court need not consider the need "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." The Supreme Court made clear the importance of that omission:

> The SRA then provides additional guidance about how the considerations listed in § 3553(a)(2) pertain to each of the Act's main sentencing options—imprisonment, supervised release, probation, and fines. See § 3582(a); § 3583; § 3562(a); § 3572(a). These provisions make clear that a particular purpose may apply differently, or even not at all, depending on the kind of sentence under consideration. For example, a court may *not* take account of retribution (the first purpose listed in § 3553(a)(2)) when imposing a term of supervised release.

Tapia v. United States, 564 U.S. 319 (2011) (emphasis in original). This has been recognized by the Second Circuit:

> Supervised release was established by the Sentencing Reform Act of 1984, as amended, 18 U.S.C. § 3551 et seq., and was designed "to ease the defendant's transition into the community after the service of a long prison term for a particularly serious offense, or to provide rehabilitation to a defendant who has spent a fairly short period in prison for punishment or other purposes but still needs supervision and training programs after release." S.Rep. No. 98–225, at 124 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3307…Supervised release is not, fundamentally, part of the punishment; rather, its focus is rehabilitation.

United States v. Aldeen, 792 F.3d 247, 252 (2d Cir. 2015), as amended (July 22, 2015).

The purpose of supervision has always been rehabilitative, not punitive, as the Supreme Court made clear in 2000 in United States v. Johnson, 529 U.S. 53 (2000). There, the Supreme Court held that an excessively long prison term could not be balanced by a reduction in the term of supervised release, because the purposes of prison and supervised release are fundamentally distinct:

> Congress intended supervised release to assist individuals in their transition to community life. Supervised release fulfills rehabilitative ends, distinct from those served by incarceration. See § 3553(a)(2)(D); United States Sentencing Commission, Guidelines Manual §§ 5D1.3(c), (d), (e) (Nov.1998)…In the instant case, the transition assistance ordered by the trial court required respondent, among other conditions, to avoid possessing or transporting firearms and to participate in a drug dependency treatment program. These conditions illustrate that supervised release, unlike incarceration, provides individuals with postconfinement assistance.

5

Johnson, 529 U.S. at 59–60.

The Sentencing Commission itself elsewhere recognizes a fundamental difference between Supervised Release and Parole and Probation:

> Although supervised release has some similarities to the other two primary types of nondetentive monitoring, parole and probation, there are significant differences. Just as with federal parole, "Congress intended supervised release to assist individuals in their transition to community life," therefore, "supervised release fulfills rehabilitative ends, distinct from those served by incarceration." Yet, unlike parole, offenders do not serve terms of supervised release as a substitute for a portion of their sentences of imprisonment. Furthermore, "[s]upervised release departed from the parole system it replaced by giving district courts the freedom to provide post release supervision for those, and only those, who need[] it." Like federal probationers, offenders on supervised release are subject to the jurisdiction of federal courts, are monitored by federal probation officers, and they also are typically subject to the same types of conditions. But "[s]upervised release, in contrast to probation, is not a punishment in lieu of incarceration" and, moreover, supervised release is primarily concerned with "'facilitat[ing] the reintegration of the defendant into the community.'"

United States Sentencing Commission.[4] Indeed, the Sentencing Commission specifically explained the reason for the omission of § 3553(a)(2)(A) from the sentencing factors for supervised release: "The legislative history indicates that section 3553(a)(2)(A) was not included for consideration under

---

[4] "Federal offenders Sentenced to Supervised Release," ("2010 Report") July 2010, 1-2, available at http://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2010/20100722_Supervised_Release.pdf (last visited January 11, 2016). See also United States Sentencing Commission, "Supervised Release Primer," August 2014, p. 4 (available at http://www.ussc.gov/sites/default/files/pdf/training/primers/2014_primer_supervised_release.pdf ("In determining whether to impose a term of supervised release … the court is *not* directed to consider whether the supervised release term is necessary "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense" (emphasis in original); United States v. Hanrahan, 508 F.3d 962, 971 (10th Cir. 2007) (The purpose of a supervised release sentence is to provide enough supervision to prevent recidivism, citing U.S.S.G. Ch.7 Pt. A(4) ("the purpose of . . . supervised release should focus on the integration of the violator into the community, while providing the supervision designed to limit further criminal conduct")(emphasis supplied).

18 U.S.C. § 3583(c) because the primary purpose of supervised release is to facilitate the integration of offenders back into the community *rather than to punish them.*" Id. at 9.

Historically, some courts have cited grounds for early termination such as "changed circumstances" and "exceptionally good behavior." United States v. Lussier, 104 F.3d 32, 36 (2d Cir. 1997). But those grounds are not limits on a district court's authority to terminate supervised release; they are merely examples provided by the Second Circuit. Trotter, 2018 WL 3421313 at *13.

Courts in this Circuit have frequently granted motions for early termination when an individual accomplishes the rehabilitative purpose of supervised release. Id. at *19 ("Automatically raising the issue [of early termination] in all cases after one year should be considered."); see also U.S.S.G. § 5D1.2, Application Note 5 (2016) (encouraging courts to grant early termination "in appropriate cases"). As the Second Circuit has repeatedly made clear, "[s]upervised release is not, fundamentally, part of the punishment; rather, its focus is rehabilitation." United States v. Aldeen, 792 F.3d 247, 252 (2d Cir. 2015). Once supervised release no longer fulfills its rehabilitative purpose, supervised release is no longer necessary. See Johnson v. United States, 529 U.S. 694, 709 (2000) ("Supervised release departed from the parole system it replaced by giving district courts the freedom to provide postrelease supervision for those, and only those, who needed it." (citing legislative history)). But, it is more than unnecessary; supervision without the need for rehabilitation "may increase the likelihood of recidivism" at the expense of misdirecting the "limited" "resources of the Probation Department." Trotter, 2018 WL 3421313 at *2, 7, 16.

As Judge Arterton recently put it: "Supervised release is directed to rehabilitation, not punishment. Thus, when its rehabilitative purposes have been accomplished as determined by a supervisee's overall conduct following release from prison, there is no reason for its continuation. Prolonging supervised release could disserve rehabilitation by over-scrutiny and, especially in this

7

time of Probation Office budget reductions, result in unnecessary expenditures." United States v. Ramos, No. 3:11-cr-001 (JBA), Order Granting Defendant's Motion for Early termination of Supervised Release, (D. Conn. March 17, 2020) at 1.

Mr. Lewis does not need continued supervision. He is living a stable life at age 42, with an extended family. He is currently employed in a good job and has a concrete plan for future career growth. He has completed all required conditions of his release and now has connections to resources, should he wish to seek additional help in the future. Continuing with supervision at this point would misdirect the United States Probation Office's limited resources, which should be directed at high-risk individuals, requiring assistance as they transition back into community life. As such, Mr. Lewis' motion for early termination should be granted.

One aspect of Mr. Lewis' case is unusual. He was sentenced before the Fair Sentencing Act was passed, lowering the statutory penalties for crack cocaine offenses. He was then released from prison before the passage of the First Step Act, which allowed retroactive application of those reduced penalties in some cases. He thus, paradoxically, served his entire sentence before he had the chance to seek a reduction under the First Step Act, while codefendants such as Leonard Jones, Lonnie Jones, Lyle Jones, Jr., Aaron Harris, Kenneth Richardson, Quinne Powell, and Damon Walker all had their much longer sentences reduced. If justice requires that their punishment should have been less than at their original sentencing, it logically should have been less for Mr. Lewis as well. The lamentable willingness of successive Congresses to delay for years to correct the excesses of draconian drug laws prevented Mr. Lewis from benefitting, proportionally, as his codefendants did. He can never get back the extra time he served.

However, the Second Circuit has recently made clear that he can still get some small measure of relief. It recently held that the First Step Act allows for adjustments to sentences of supervised release as well as prison sentences. United States v. Holloway, ___ F.3d ___. No. 19-1035-CR, 2020

WL 1966840, at *3 (2d Cir. Apr. 24, 2020). Holloway was a defendant who was in a similar situation – sentenced under the old crack laws, but released before the First Step Act. He was denied First Step Act relief in part because he had already been released from his prison term.

The Circuit noted, however, that resentencing to a reduced term of supervised release was also possible under the Act:

> the district court could still reduce his term of supervised release. On remand, if the district court does so, it may factor in how much (if at all) it would have reduced Holloway's prison term. See United States v. Barresi, 361 F.3d 666, 675 (2d Cir. 2004); see also United States v. Blackburn, 461 F.3d 259, 262 & n.2 (2d Cir. 2006) (holding that challenge to sentence after release from prison was moot only where record made clear that "the possibility of the district court's imposing a reduced term of supervised release on remand is so remote and speculative" that merits decision would amount to advisory opinion). Because it remains possible for this Court to grant Holloway some form of 'effectual relief' should he prevail, the appeal is not moot in its entirety.

Holloway, at *3.

This reasoning is consistent with the language of Section 404 of the Act, which authorizes courts to "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) were in effect at the time the covered offense was committed." That language does not limit the court's authority to reducing only the incarceratory portion of a sentence; a term of supervised release is part of the sentence for the offense. United States v. Haymond, 139 S. Ct. 2369, 2379, 204 L. Ed. 2d 897 (2019) ("an accused's final sentence includes any supervised release sentence he may receive.").

As part of First Step Act proceedings, courts in this district and elsewhere have reduced defendants' terms of supervised release along with terms of incarceration. For example, on January 3, 2020, this Court did so for Roshaun Hoggard, reducing his previous term of supervised release as well as his prison sentence. United States v. Glover et al, No. 3:08-cr-004-JCH, Order, Doc # 1544 (D.Conn., January 3, 2020). Mr. Hoggard's codefendant, Genaro Marte, also received a reduction in

9

both his prison sentence and term of supervised release. Id., Doc # 1513. See also United States v. Davis, No. 07-CR-245S (1), 2019 WL 1054554 (W.D.N.Y. Mar. 6, 2019); United States v. O'Neal, No. 09-20004, 2019 WL 2144795 (C.D. Ill. May 16, 2019).

Mr. Lewis is not making a First Step Act claim in this filing; a defendant can only make one such claim, and if this motion is granted there will be no need for a formal claim under the Act. He, nonetheless, notes his situation, and the irony that while several codefendants received substantial reductions in their prison terms he served 100% of his term. He reserves the right to file a First Step Act motion at the appropriate time.

Finally, the current pandemic of COVID-19 is having effects on all sectors of American society, including the criminal justice system. The cardinal principle of supervised release is that resources should not be wasted on providing supervision that is not necessary. In the current crisis, spending resources on Mr. Lewis, given his record of compliance with the conditions of release, and his stable family life, is unnecessary.

As noted above, the United States Probation Office takes no position on this motion. The United States Attorney's Office does not object to the granting of this motion.

WHEREFORE, Rasheen Lewis respectfully requests that the Court immediately terminate his term of supervised release.

Respectfully Submitted,

THE DEFENDANT,
Rasheen Lewis

FEDERAL DEFENDER OFFICE

Date: May 18, 2020                     */s/ Kelly M. Barrett*
                                                First Assistant Federal Defender
                                                265 Church Street, 7th FL
                                                New Haven, CT 06510
                                                Phone: (203) 498-4200
                                                Bar No.: ct27410
                                                Email: kelly_barrett@fd.org

## CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that on May 18, 2020, a copy of the foregoing motion was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                                */s/ Kelly M. Barrett*
                                                Kelly M. Barrett